**FILED**
**Jun 25, 2020**
**12:27 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **MICHAEL FERRELL,** | ) | **Docket No. 2017-07-0828** |
| **Employee,** | ) | |
| **v.** | ) | |
| **WADE NORRIS LOGGING, LLC,** | ) | **State File No. 56416-2015** |
| **Employer,** | ) | |
| **And** | ) | |
| **FORESTRY MUT. INS. CO,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |
| | ) | |

## COMPENSATION HEARING ORDER

The Court held a Compensation Hearing to determine whether Mr. Ferrell is entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) or additional benefits under section 50-6-242 as an extraordinary case. Wade Norris Logging contended that Mr. Ferrell's claim for benefits under either section is barred by his termination. Alternatively, WNL contended Mr. Ferrell is limited to increased benefits because his case is not extraordinary. For the reasons below, the Court holds Mr. Ferrell's termination does not prevent his award for increased benefits, and his case is extraordinary.

### History of Claim

The Court previously held a Compensation Hearing on February 7, 2019, concluding that Mr. Ferrell sustained compensable injuries to his neck, back, and inner-ear. He was not permanently and totally disabled, and he retained a thirteen-percent permanent impairment. This entitled him to an original award of $25,687.35 based on the rating. His initial compensation period expired on April 5, 2019.

The facts of Mr. Ferrell's case and the medical proof about his treatment, which was introduced at both hearings, is summarized below.[1]

---

[1] The Court provided a detailed summary of the medical testimony in its first Compensation Hearing Order and incorporates it by reference.

On July 11, 2015, Mr. Ferrell sustained injuries in a work-related truck wreck, when he drove off the road to avoid hitting a car crossing into his lane, and his truck overturned. Mr. Ferrell injured his neck, back, and inner ear in the accident.[2] He had no prior problems with his neck but did have a previous back injury and surgery at L5-S1 in the early nineties.

WNL authorized treatment for Mr. Ferrell's neck injury with Dr. John Brophy, whom he selected from a panel. Dr. Brophy diagnosed a broad-based left C5-6 herniated disc with cord compression and signal changes, and he performed surgery. After follow-up treatment, Dr. Brophy concluded Mr. Ferrell's cervical radiculopathy had resolved. He testified that, from a neurosurgical standpoint, Mr. Ferrell reached maximum medical improvement and could return to work at full duty on July 28, 2016. He assigned a six-percent impairment and no permanent restrictions from the neck injury.

Mr. Ferrell sought an independent medical evaluation with Dr. Samuel Chung for his neck. Dr. Chung testified that, as an evaluating physician, he does not assign permanent restrictions. Instead, he suggested activity recommendations of avoiding overhead work, work away from the body, and work requiring repetitive flexion, extension, and rotation of the neck. Dr. Chung did not think Mr. Ferrell could return to truck driving or doing "physical kinds of work" due to his back and neck surgeries and symptoms. Dr. Brophy disagreed with Dr. Chung's findings and activity recommendations.

Turning to the back, Dr. Brophy concluded that Mr. Ferrell's L4-5 HNP was unrelated to his work injury. WNL denied Mr. Ferrell's back injury based on Dr. Brophy's opinion, so Mr. Ferrell sought treatment from Dr. Raymond Gardocki. Dr. Gardocki was the only treating physician to assign permanent restrictions. Dr. Gardocki treated Mr. Ferrell for a broad-based L4-5 herniated disc HNP, which he causally related to the work injury. After conservative measures failed, he performed surgery.

After six months of follow-up treatment, Dr. Gardocki ordered a functional capacity evaluation (FCE). He testified the FCE concluded Mr. Ferrell could safely work in the light- to medium-workload category. Based on Mr. Ferrell's description of his commercial driving, the therapist determined he demonstrated less tolerance than required of the truck-driving job demands. Specifically, he performed below the required tolerance of consistent sitting, frequent bending, and occasional lifting and carrying to return to driving. Dr. Gardocki adopted the FCE findings as permanent restrictions. He stated Mr. Ferrell reached MMI for his back on February 20, 2018, and he assigned a seven-percent impairment. As stated above, the Court awarded Mr. Ferrell benefits equal to thirteen percent to the body as a whole at the first Compensation Hearing.

After Mr. Ferrell's initial compensation period expired, he filed a Petition for

---

[2] WNL provided authorized treatment for the inner-ear condition, with providers concluding he had a zero-percent impairment and no permanent restrictions from a vestibular standpoint.

Benefit Determination asserting entitlement to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) or Tennessee Code Annotated section 50-6-242(a) as an extraordinary case.

At this hearing, Mr. Ferrell and Mr. Wade Norris, owner of Wade Norris Logging, testified and the parties introduced supplemental deposition testimony from Dr. Raymond Gardocki. For Mr. Ferrell's vocational proof, he introduced the deposition testimony of Dr. Woody Kennon and WNL relied on the in-person testimony of Michelle McBroom Weiss. The Court summarizes this testimony below.

*Lay testimony*

Mr. Ferrell is now sixty years old, and he lives in Henderson County, Tennessee. He completed the tenth grade and obtained a GED. He has not worked since his 2015 work injury. As for his work history, he testified his last five jobs over the last ten to twelve years involved truck-driving. The physical requirements of these jobs included climbing in and out of the truck, shifting gears, securing loads, performing pre- and post-trip inspections, and pulling the hood to check the oil. He stated he was once the owner/operator of a truck. He has also worked as a driver and manager for a trucking company, managing/dispatching loads, preparing paperwork, and maintaining the drivers' DOT certifications.

Before commercial driving, he worked as a carpet installer, owner of a convenience store, computer technician, and flea market vendor. The carpet installation work was "extremely physical." His work at his family-owned convenience store involved sweeping, mopping, stocking shelves, and lifting heavy inventory. He also purchased products, maintained inventory, operated the cash register, managed the business, and cooked. Concerning his computer work, Mr. Ferrell is self-taught, worked in a computer store, and performed some freelance work. He has no certification or formal training. He last worked in computers in 1999. Mr. Ferrell testified he also sold merchandise at flea markets, which involved buying items and reselling them.

Mr. Ferrell testified that after treatment, he has ongoing back pain, left-leg pain, neck pain radiating down both arms, and balance difficulties. While not prescribed by a doctor, he walks with a cane. He cannot do household chores, bush hog, mow his small farm, or sit or stand for long periods of time. He did not renew his commercial driver's license because he would not pass the physical. He no longer drives at all. His adult son assists with cooking and cleaning. He stated he feels worse now than when he underwent the FCE. He takes 1,600 milligrams or more of ibuprofen daily.

Mr. Ferrell said he has not looked for work since WNL for several reasons. He underwent treatment for many years after the accident and was not released until February 2018. He cannot physically drive a truck based on his permanent restrictions. He cannot stand long enough to perform any job he is qualified to do and is limited by pain. Regarding

3

computers, his knowledge is outdated. Finally, as for additional education, he could not sit long enough to attend school, and his poor internet connection would hinder his ability to complete an online program.

As for his termination, Mr. Ferrell testified WNL terminated him shortly after the accident because it did not have a truck for him to drive. However, a separation notice stated he was "terminated for cause as employee involved in wreck causing significant property damage to truck; no truck available for employee to drive." Mr. Ferrell maintained that WNL never accused him of misconduct or any policy violation.

Wade Norris, WNL's owner, testified regarding Mr. Ferrell's termination. He stated Mr. Ferrell called him after the accident, and he went to the scene and observed the damage to the trailer. Mr. Norris did not see any skid marks on the road. He terminated Mr. Ferrell several days later in part because of the damage to the truck. Although the First Report of Injury stated that WNL prepared it, Mr. Norris testified that he does not agree with the description of the injury. Despite his disagreement, Mr. Norris acknowledged he did not witness the accident, could not cite any company rule Mr. Ferrell violated, and did not discipline him.

*Dr. Gardocki's testimony*

Dr. Gardocki's supplemental deposition testimony focused on Mr. Ferrell's symptoms after surgery for his work injury at L4-5 versus symptoms relating to his pre-existing condition at L5-S1 and the impact of each on the permanent restrictions Dr. Gardocki assigned. He stated that after the May 2017 surgery, Mr. Ferrell complained of ongoing back pain. He eventually ordered the FCE to obtain an objective basis for assigning permanent restrictions for Mr. Ferrell's work injury. The FCE was performed on December 28, 2017.

Dr. Gardocki stated he believed Mr. Ferrell was having symptoms from his L5-S1 at the time of the FCE. When asked whether Mr. Ferrell's performance on the FCE was related to his L4-5 surgery versus his degenerative disc at L5-S1, Dr. Gardocki stated, "I don't think you could separate that out reasonably. There's just too much overlap between the two of them." Later in his testimony, he stated, "I can't be sure whether his performance on the FCE was wholly from L4-5 or from L5-S1, or a little of both." Dr. Gardocki later confirmed that the rating and restrictions he assigned for the L4-5 level, based on the FCE, remained the same, and he would not change the restrictions for the work injury.

Mr. Ferrell returned several times to Dr. Gardocki after he was released at MMI in February 2018. Dr. Gardocki stated Mr. Ferrell's L4-5 disc looked good, but he was developing a degenerative disc at L5-S1 that was worsening, and he thought the source of his leg pain was likely the foraminal stenosis at L5-S1.

Dr. Gardocki signed a Physician Certification Form, which states "due to permanent

4

restrictions on activity the employee has suffered as a result of the injury . . . the employee no longer has the ability to perform . . . [his] pre-injury occupation." He testified that the FCE that he adopted said that Mr. Ferrell should not return to his truck-driving job, and that was the basis for him signing the form.

*Vocational Proof*

Mr. Ferrell underwent an in-person vocational evaluation with Woody Kennon PhD, a licensed psychologist whose practice includes performing vocational evaluations in workers' compensation cases. Dr. Kennon performed several tests, and Mr. Ferrell did very well on intellectual testing. His cognitive ability was in the "above average" range and seventy-ninth percentile. On academic testing, Mr. Ferrell performed above a twelfth-grade level. He tested with excellent reading and comprehension skills atypical for someone with a GED. His cognitive ability is at a college level, and Dr. Kennon stated he demonstrated the ability to learn.

Mr. Ferrell's truck-driving work at WNL was in the medium-strength category. Dr. Kennon performed a transferrable skills analysis and considered the restrictions placed by Dr. Gardocki, putting him in the light to medium-work category. However, when considering Mr. Ferrell's limitations in sitting, standing and walking, Dr. Kennon placed him in the sedentary category. Based on these findings, he concluded Mr. Ferrell suffered a 91.46% loss of highly transferrable jobs and a ninety-percent loss of moderately transferrable jobs. Based on Dr. Chung's activity recommendations, Dr. Kennon testified Mr. Ferrell suffered a 96.78% loss of highly transferrable jobs and 99.57% of moderately transferrable jobs.

Dr. Kennon acknowledged that Mr. Ferrell's vocational opportunities would have been greater if he had considered light to medium jobs instead of sedentary only. He further acknowledged that Dr. Chung's opinion that Mr. Ferrell could not do "any kind of physical work" was inconsistent with Dr. Brophy's and Dr. Gardocki's testimony, and as demonstrated by the FCE.

Turning to WNL's vocational proof, Michelle McBroom Weiss holds a master's degree in vocational rehabilitation, and her practice includes performing vocational testing and evaluations in workers' compensation cases.[3] Ms. Weiss reviewed Mr. Ferrell's medical records, the FCE, medical depositions, interrogatories, and Dr. Kennon's report. She interviewed Mr. Ferrell, used his academic and intelligence test results from Dr. Kennon's evaluation, and performed a pre-injury work profile and transferrable skills analysis using the local labor market. As for restrictions, Ms. Weiss testified that Dr.

---

[3] Ms. Weiss testified that due to the pandemic, the evaluation was conducted telephonically. She did not perform her own testing because the evaluation was not in-person. However, she stated she administers the same academic and intelligence testing as Dr. Kennon and, in general, her test results are very similar to Dr. Kennon's.

Brophy assigned no permanent restrictions; therefore, she used Dr. Gardocki's restrictions from the FCE, which stated Mr. Ferrell was in the light-to medium safe workload level. She noted the FCE-specific test results showed he could sit for fewer than fifteen minutes, stand less than forty minutes, and intermittently stand, sit, and walk less than sixty minutes. She stated his weight-lifting abilities were at the medium level. Dr. Gardocki adopted the therapist's conclusion that Mr. Ferrell's demonstrated tolerance was less than the required demands of a commercial truck driver.

Ms. Weiss found Mr. Ferrell experienced a twenty-four to twenty-six percent loss of access to jobs in West Tennessee. She stated that, if she considered the FCE to restrict him to limited light work, Mr. Ferrell would have a fifty-seven percent loss of access to jobs in the Jackson metropolitan area. She further found a thirty-three percent loss of wage-earning capacity. She concluded Mr. Ferrell's overall vocational disability, based on Dr. Gardocki's restrictions, is thirty percent for limited medium-level work and forty-five percent for limited light work. Mr. Ferrell's overall vocational disability for the neck was zero percent based on Dr. Brophy assigning no restrictions.

Ms. Weiss disagreed with Dr. Kennon's decision to consider sedentary jobs in his transferrable skills analysis instead of light to medium jobs. She explained that sedentary jobs involve predominantly sitting, which Mr. Ferrell would have difficulty doing. She stated that light to medium jobs are a "better match" with his restrictions and the FCE findings regarding his ability to sit, stand, and walk, because it considers jobs where he can alternate sitting, standing, and walking. She further disagreed with Dr. Kennon's use of Dr. Chung's activity recommendations in his analysis because, as an evaluating physician, Dr. Chung provided recommendations not restrictions. She also stated Dr. Chung's recommendations were too vague to assist her in assessing Mr. Farrell's vocational situation.

### Findings of Fact and Conclusions of Law

At a Compensation Hearing, the employee must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2019).

The Court first considers whether Mr. Ferrell is entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B). Under that statute, he is entitled to increased benefits if, at the time his initial benefit period expired, he had not returned to work at the same or greater wage earned at the time of injury. The proof is uncontroverted that Mr. Ferrell had not returned to work when his initial compensation period expired. However, section 50-6-207(3)(D)(ii) provides an employee is not entitled to increased benefits when his loss of employment is due to misconduct. WNL argued Mr. Ferrell is not entitled to additional benefits based on misconduct in having a wreck. The Court finds this argument meritless.

Mr. Ferrell gave credible, uncontroverted testimony that the collision causing his work injury occurred when he swerved to avoid hitting a car encroaching his lane of traffic. Mr. Norris insinuated the wreck was his fault; however, he was not a witness to the accident, had no personal knowledge of it, and introduced no proof to contest Mr. Ferrell's version of the accident. Moreover, Mr. Norris could not cite any rule Mr. Ferrell violated and admitted he did not discuss the termination or discipline him. Thus, the Court holds Mr. Ferrell is not barred from additional benefits based on misconduct and is entitled to increased benefits under section 50-6-207(3)(B).

Next, the Court considers whether Mr. Ferrell is entitled to additional benefits under section 50-6-242(a) instead of section 50-6-207(3)(B). To receive additional benefits, the Court must find this is an extraordinary case and that, by clear and convincing evidence, it would be inequitable to limit Mr. Ferrell's recovery to only the benefits under section 50-6-207(3)(B). Further, the Court must make specific, documented findings that *as of the date of the award*: (1) Mr. Ferrell has an impairment rating of at least ten percent to the body as a whole according to the AMA Guides from the authorized treating physician; (2) the authorized treating physician certified on a Bureau form that he no longer has the ability to perform his pre-injury occupation due to permanent restrictions from the work injury; and (3) he is earning less than seventy percent of the pre-injury average weekly wage or salary. *See generally* Tenn. Code Ann. § 50-6-242(a) (Emphasis added).

WNL argued that Mr. Ferrell is not entitled to benefits under this section because he did not establish all three factors by a preponderance of the evidence.

As for the first and second factors, WNL argued the statute requires Mr. Farrell to prove that he has at least a ten-percent impairment rating and provide a Physician Certification Form from the *same* authorized treating physician. WNL contended that Mr. Ferrell did not meet these requirements because Dr. Gardocki provided the Physician Certification Form, and his rating was less than ten percent. The Court disagrees. WNL's argument overly restricts section 50-6-242(a)(2), suggesting that an employee can only have one authorized treating physician. This discounts cases like this one where an employee has injuries to multiple body parts, with multiple impairment ratings from more than one authorized physician. In the previous Compensation Hearing Order, this Court designated Dr. Gardocki as Mr. Ferrell's authorized treating physician for his back and held Mr. Ferrell sustained a total permanent impairment of thirteen percent to the body as a whole, based on the AMA Guides, from the combined ratings of six and seven percent from Drs. Brophy and Gardocki. Thus, at the time of the award, specifically the trial for additional benefits, Dr. Gardocki was an authorized treating physician, and the Court finds Mr. Ferrell had a thirteen-percent impairment.

As to the second factor, the Court finds that Mr. Ferrell's authorized physician, Dr. Gardocki, certified on a form that Mr. Ferrell no longer has the ability to perform his pre-injury occupation due to permanent restrictions from the injury. Under Tennessee Code

Annotated section 50-6-242(a)(2)(B), Dr. Gardocki's certification is presumed correct and may only be overcome by contrary clear and convincing evidence. WNL offered no medical proof refuting Dr. Gardocki's opinion but relied solely on its cross-examination of him. The cross-examination failed to establish clear and convincing evidence to overcome Dr. Gardocki's certification.

WNL also challenged whether Dr. Gardocki's permanent restrictions resulted from his work injury or his pre-existing L5-S1 condition. Dr. Gardocki assigned permanent restrictions for the L4-5 back injury of light to medium work based on FCE findings, which also concluded Mr. Ferrell could not return to truck driving. In Dr. Gardocki's deposition, WNL questioned whether Mr. Ferrell's L5-S1 symptoms impacted his performance on the FCE. He responded, "I don't think you could separate that out reasonably. There's just too much overlap between the two of them." However, Dr. Gardocki did not change his opinion regarding restrictions for the L4-5 work injury. He testified that the restrictions he assigned for the L4-5 level, based on the FCE, "remained the same," and he would not change them.

As for his "pre-injury occupation," Mr. Ferrell's uncontroverted testimony was that his last five jobs over the last ten to twelve years involved mostly truck-driving. He testified that he dispatched, managed loads, and did paperwork for one employer, but he also drove a truck at that time. The Court holds that Mr. Ferrell's pre-injury occupation was truck-driving, and WNL did not present clear and convincing evidence to overcome the presumption of correctness afforded Dr. Gardocki's opinion that Mr. Ferrell can no longer perform that occupation due to permanent restrictions from his work injury.

As to the third factor, WNL did not rebut Mr. Ferrell's testimony that he has not worked since his termination from WNL. Thus, he established that he is not earning an average weekly wage or salary greater than seventy percent of his pre-injury wage. Accordingly, the Court holds Mr. Ferrell demonstrated all three factors supporting an award for additional disability benefits.

The Court next examines the totality of the circumstances in assessing whether it is inequitable to limit Mr. Ferrell's award to increased benefits. Mr. Ferrell testified to ongoing neck, arm, back, and leg pain, as well as balance difficulties. He no longer drives a car and cannot perform household chores or maintain his yard. He described difficulty sitting, standing, and walking for long periods of time, which the FCE corroborated. These findings are important because the Appeals Board has held that "an employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded." *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017).

Mr. Ferrell remains under restrictions from Dr. Gardocki that preclude him from returning to commercial trucking. Both vocational experts considered Dr. Gardocki's restrictions when analyzing Mr. Ferrell's transferrable skills, employment opportunities,

and vocational disability, and they arrived at vastly different conclusions. Ms. Weiss concluded his restrictions and findings were consistent with limited light to limited medium jobs, and his vocational disability ranged from thirty percent for limited medium-level work and forty-five percent for limited light work. Dr. Kennon, on the other hand, found Mr. Ferrell's restrictions limited him to only sedentary jobs and concluded Mr. Ferrell had at least a ninety percent loss of access to jobs.

After considering the experts' testimony, the Court finds Ms. Weiss's testimony more persuasive and more accurately represents the vocational impact of Mr. Ferrell's injuries. Dr. Kennon's consideration of only sedentary jobs and his reliance on Dr. Chung's vague activity recommendations was inconsistent with Mr. Ferrell's permanent restrictions and his treating physicians' testimony. Thus, the Court finds Ms. Weiss's testimony more helpful in assessing Mr. Ferrell's award of permanent disability benefits.

Based on Ms. Weiss's testimony, the Court finds Mr. Ferrell's work capabilities, considering the totality of the proof and Mr. Ferrell's need to alternate sitting, standing, and walking, fall in the limited light-work level and assesses his vocational disability to be forty-five percent. If Mr. Ferrell were limited to the original award and increased benefits, he would receive approximately 94.7 weeks or 21.06% PPD, which is significantly less than Ms. Weiss's assessment.

Thus, in light of the totality of the circumstances, the Court finds by clear and convincing evidence that limiting Mr. Ferrell to benefits under section 50-6-207(3)(B) would be inequitable and awards him 202.5 weeks or forty-five percent PPD under section 50-6-242. WNL paid Mr. Ferrell 58.5 weeks of benefits as an original award, which leaves a balance of 144 weeks. At his weekly compensation rate of $439.10, Mr. Ferrell is awarded $63,230.40 in additional benefits.

*Discretionary Costs*

Mr. Ferrell's counsel sought discretionary costs under Rule 54 of the Tennessee Rules of Civil Procedure. Specifically, he requested $650 for Dr. Kennon's deposition; $273.65 for the court reporter for Dr. Kennon's deposition; and $101.75 for Dr. Gardocki's deposition.

Rule 54.04(2) provides recovery for reasonable and necessary "court reporter expenses for depositions" and "expert witness fees for depositions." *Garassino v. W. Express, Inc.*, No. M2016-02431-SC-R3-WC, 2018 Tenn. LEXIS 60, at *8-9 (Tenn. Workers' Comp. Panel Feb. 8, 2018). Here, because the Court accepted Ms. Weiss's vocational opinion, the Court, in its discretion, denies the request for costs associated with Dr. Kennon's deposition. The Court holds WNL shall pay discretionary costs of $101.75.

9

**IT IS, THEREFORE, ORDERED** as follows:

1.  Wade Norris Logging or its carrier shall pay Mr. Ferrell additional benefits of 144 weeks or $63,230.40.

2.  Wade Norris Logging shall continue to pay reasonable and necessary future medical expenses as required by the previous Compensation Hearing Order.

3.  Mr. Ferrell's attorney fee will exceed $10,000. Therefore, Mr. Ferrell's attorney shall file an application for approval of fees within five business days, outlining the factors identified in Tennessee Supreme Court Rule 8, Rules of Profession Conduct 1.5. *See* Tenn. Code Ann. 50-6-226(2)(C).

4.  Wade Norris Logging shall pay Mr. Ferrell's discretionary costs of $101.75.

5.  Court costs of $150.00 are assessed against Wade Norris Logging under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019), to be paid within five days of this order becoming final. Wade Norris Logging shall file a statistical data form (SD2) within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244.

6.  Absent an appeal of this order, it shall become final thirty days after issuance.

**ENTERED June 25, 2020.**

_Amber Luttrell_
**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1.  Petition for Benefit Determination
2.  Dispute Certification Notice
3.  Scheduling Order
4.  Motion to Extend
5.  Order Granting Motion to Extend Scheduling Order Deadlines
6.  Amended Scheduling Order
7.  Employer's Motion to Extend Deadlines
8.  Employee's Objection to Motion to Extend Deadlines
9.  Employee's Amended Objection to Motion to Extend Deadlines
10. Order on Employer's Motion to Extend Deadlines

11. Order Confirming Compensation Hearing
12. Employee's Witness and Exhibit List
13. Employer's Witness and Exhibit List
14. Employee's Trial Brief
15. Employer's Pre-Trial Brief
16. Employer's Supplemental Pre-Trial Brief
17. March 13, 2019 Compensation Hearing Order Granting Benefits (original award)
18. Joint Pre-Compensation Hearing Statement
19. Dispute Certification Notice (post-discovery)

Exhibits:
1. First Report of Injury
2. Separation Notice
3. Photographs (collective exhibit-3 pages)
4. Physician Certification Form- Dr. Raymond Gardocki
5. Employer's Vocational Report- Michelle McBroom Weiss
   a. Curriculum Vitae of Michelle McBroom Weiss
6. Dr. Gardocki's deposition
7. Dr. Chung's deposition
8. Dr. Brophy's deposition
9. Dr. Gardocki's supplemental deposition
10. Dr. Woody Kennon's deposition
11. Motion to Assess Discretionary Costs

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on June 25, 2020.

| Name | Via Email | Service sent to: |
|---|---|---|
| David Hardee, Employee's Attorney | X | kperry@hmdlaw1.com |
| Jeff Foster, Employer's Attorney | X | jfoster@morganakins.com |

_Penny Shrum_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. *See* Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support  $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                          RDA 11082